UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

CATHERINE THOMPSON,            :
                               :
           Plaintiff           :
                               :      CIVIL NO. 3:CV-04-2335
       -vs-                    :
                               :      (Judge Kosik)
                               :
SCOTT C. AUSTIN and            :
WERNER ENTERPRISES, INC.,      :
                               :
           Defendants          :

## **MEMORANDUM AND ORDER**

This matter is before the court on plaintiff's motion for a new trial pursuant to Federal Rule of Civil Procedure 59, claiming a jury verdict was against the weight of the evidence, and that the court committed various errors during the trial. For the reasons which follow, the motion will be denied.[1]

<u>Procedural History and Trial Evidence</u>

The case has had an extended procedural history which included a host of contentious *in limine* motions. It went to trial before a jury on June 12, 2006, and the jury returned a general verdict for the defense on June 14, 2006.

---

[1] At the outset of this motion, the defense claims the plaintiff waived her right to move for a new trial because of a failure to move for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 and <u>Greenleaf v. Garlock</u>, 174 F.3d 352 (3d Cir. 1999) citing <u>Yohannon v. Keene</u>, 924 F.2d 1255, 1262 (3d Cir. 1991) and a non-precedential opinion of the same appellate court. Regardless of whether we agree or disagree with the defense, we will proceed to the substantive merits of plaintiff's motion.

At trial, plaintiff Catherine Thompson testified that she got up at 5:30 a.m. on the morning of April 8, 2004. She worked a double shift as a licensed practical nurse. At 11:00 p.m., her shift ended and she proceeded to go home driving a 1994 Mazda Protege. As she drove onto the entrance ramp towards the southbound lanes of I-81 in Scranton, Pennsylvania, she saw two trucks, with the defendant's vehicle leading, put on their blinkers and turn into the left lane of travel. There was a yield sign on the ramp entrance and she accelerated to approximately 50 mph. She did not slow down as she got onto the right lane of I-81. As she got on I-81, the trucks were behind her. While waiting for the trucks to pass, she was suddenly pushed into the left lane sideways. In a spinning mode, she saw the truck of the defendant pass her in the right lane.

On cross-examination, plaintiff said she did not see the truck from the time she was merging on I-81 until after the accident. She could not recall seeing the defendant's truck or its lights blinking to indicate a return to the right lane. Plaintiff claims the right front bumper of the defendant's truck came in contact with the left corner of her vehicle. Plaintiff denies that she told a Donald Davis, who did not witness the accident, that she saw the blinkers on the defendant's truck indicating a lane change to the right, and that she could not get out of its way. Although she was interviewed about the accident by a Pennsylvania State Trooper, she could not recall telling him that after entering I-81 she found herself out of control. She could not tell him how the accident happened, "I guess not, I

don't know." The time lapse between getting onto the ramp and I-81 to the accident was approximately three minutes.

Defendant driver Scott Austin lives in Johnson City, New York. For the last couple of years, he has lived with and cared for his mother full time, because of her needs. In 2004, he decided to become a truck driver. He applied for and was accepted at a trucking school in a course that took five weeks, 8 a.m. to 4 p.m., with the weekends driving tractor-trailers much like the one he drove on the night of the accident. At school, he was taught about the use of various mirrors on the vehicles and the existence of blind spots. Upon graduation, he was tested by the State of New York and was licensed to drive tractor-trailers. While he had offers from several trucking firms, he selected defendant Werner Enterprises because of their trucking intern program over six to eight weeks with another driver.

On the evening of the accident, Austin started from a nearby location. His driver trainer was taking his turn sleeping. Austin claims he was traveling at 55 mph when he saw a car on the entry ramp to I-81. He and a truck behind him put on the turn signals to merge in the left or passing lane. He then saw the headlights of a merged vehicle on I-81. Two or three minutes passed and in his mirrors he still reflected the headlights behind him in the right lane. He put on his turn signals to return to the right lane as did the truck behind him. He again looked in his mirror and the headlights he observed were gone. He could not locate plaintiff so he stayed in the lane when suddenly her car showed up in front of him. He did not feel or hear anything, but when he saw plaintiff's vehicle, there was "a little crunching

sound." Austin claims he did not move his vehicle into the right lane until after the accident occurred when he slowed and merged to the right to avoid her to his front. He believed that the front of his vehicle made contact with plaintiff's vehicle, although he looked into his mirrors four to six times while his turn signals were engaged and before the accident occurred. Austin testified that he had not moved into the right lane even though it was his intention to do so.

Austin was questioned by the investigating state police officer. The officer never told him he would be cited for any motor vehicle violations yet, he received a citation in the mail. It was not for an improper lane change. The ticket read "traveling for a lane marked for traffic." Austin did not understand the citation but paid it through the mail even though he did not feel at fault. He claims to have had no way to fight it. He had been fired, had no money for a lawyer and lacked reliable transportation or any vehicle at the time.

Trooper Darren Nicholas of the Pennsylvania State Police testified on behalf of the plaintiff. He spoke with both drivers. Austin told him he was traveling south in the left lane, preparing to move to the right lane when suddenly plaintiff appeared in front of him. He did not see her car in his side view mirror nor feel any impact. Plaintiff stated she was driving in the right lane when her car went out of control and hit a wall. "She could only recall seeing a lot of trucks on the road." The officer said he cited Austin for an unsafe lane change, but did not testify as to when he cited Austin.

4

Plaintiff called Donald Davis, the driver-trainer who accompanied Austin, but who was asleep at the time of the accident. He testified that Austin told him he had hit someone; that he lost sight of plaintiff's vehicle, and ". . .he turned his blinkers on to move back over to the right." Davis testified that there was no blind spot on this vehicle because of the mirrors utilized. After the accident, he noted scrape marks on the passenger side of the bumper on the truck. On cross-examination, he was confronted with his deposition testimony where he stated that in most cases, ". . . if a little car gets alongside of a tractor-trailer, there's virtually nothing that the truck can do." Davis spoke with the plaintiff where "she said that she saw the blinker and tried to move ahead but she couldn't get out of the way enough . . .". Finally, Davis opined that Austin was a very good driver, licensed in New York, and could have been driving by himself.

On the issue of liability, plaintiff called Martin Turcotte by deposition. He drove the tractor-trailer behind Austin. He went through the same maneuvers before the accident. He was asked, ". . . did you see the Werner truck move, at any time, from the left lane to make a lane change into the right lane?". He answered, "Yes." ". . . and the next thing I knew a car shot in front of his truck across the left side of the highway, bounced off the Jersey barrier, and then back across the highway to the right side of the road. . .". The witness did not see the vehicle up to the point of the accident. He was traveling three or four car lengths behind Austin. After the accident, he saw scrape marks on Thompson's vehicle as well as on the truck.

The testimony of Turcotte was a little conflicting as to how far Austin's truck had moved to the right lane. In all events, Austin's blinker lights indicated an intention to return to the right lane. On cross-examination, Turcotte indicated he had no idea of "who hit who." Turcotte stated that while Austin did not deny hitting the Thompson vehicle, he did not admit it either. Austin sought to leave it to the police. Turcotte acknowledged that for him to say how the accident occurred it would require speculation.

Plaintiff called Kerry Nelson, an accident reconstructionist, who reviewed the evidence acquired in discovery. He opined that the accident occurred because Austin moved from the left lane to the right lane and impacted the Thompson vehicle. He also opined that there were no blind spots with Austin's vehicle because of the configuration of the mirrors on the tractor. Austin should have been able to see plaintiff. We should note that there is no consistency in the trial evidence that Austin moved or the extent of his move into the right lane.

The court submitted the case to the jury on a general verdict because we denied the defense point for charge on contributory negligence.

I.

Plaintiff Thompson seeks this new trial claiming the verdict was against the weight of the evidence, and because the court committed error during the trial. As to the first reason, counsel cites little legal authority except for the premise that a new trial is warranted only where a miscarriage of justice would result if the verdict were to stand. *Fineman v. Armstrong World*

6

*Indus.*, 980 F.2d 171, 211 (3d Cir. 1992). Regardless of any independent evaluation of the evidence by the court, we believe the record would support the jury verdict based on their evaluation of the evidence and credibility alone.

II.

Next, we address whether the court committed error in the several particulars advanced by plaintiff.

A.  Plaintiff claims to have been prejudiced by the court's evidentiary rulings:

   (1) The court precluded photographs taken by plaintiff's representative in order to illustrate to the jury the location of the accident and what may have occurred.  The court sustained the defense objection on the ground that they were daylight photographs whereas the accident occurred at night.  No driver would have the same view at night.  The court offered to admit the photograph to show the roadway in the crash, but to instruct the jury not to conclude anything else from the photographs. Plaintiff's counsel appears not to have accepted the offer. Additionally, it is our recollection that the jurors may have acknowledged being familiar with the accident area during voir dire.

   (2) The court sustained an objection to testimony from the witness Turcotte concerning a conversation between himself and Austin in which plaintiff's counsel asked if Turcotte suggested to Austin ". . . what you thought might have happened?".  Asked then for his suggestion, Turcotte responded, "I thought that maybe he might have hit the back of her vehicle."  We found both inquiries speculative.  Significant, as noted earlier, Turcotte

7

indicated on cross-examination that he had no idea of "who hit who." Further, that Austin himself suggested that he left it up to the police investigation.

(3) The court erred in denying plaintiff's motion *in limine* to preclude evidence that Thompson had worked a double shift and was on her way home at night when the crash occurred. In a Memorandum, Document 51, the court noted that the defense was not seeking to infer plaintiff may have fallen asleep. It was relevant because plaintiff described to a Donald Davis conflicting versions of the accident. Also significant is that the court refused a defense motion to preclude evidence that Austin lacked experience as a driver required to operate with a driver trainer. We noted that if plaintiff sought to develop this evidence, the defense could counter with the fact that Austin was licensed in New York State as being legally qualified to be a commercial driver, Document 61.

In both instances the court believed the general and physical state of the parties was relevant in a consideration of all the evidence.

(4) Plaintiff claims the court erred in not charging the jury that Austin's unexcused violation of Section 3309, 75 Pa.C.S.A., along with his guilty plea, constituted negligence per se. Plaintiff claims there was no evidence that Austin's actions were excusable. Accordingly, plaintiff asserts the court refused to charge plaintiff's points for charge Nos. 2, 3 and 4. The court did, in fact, so charge. However, the charge further continued by alluding to the fact that defendant presented evidence to

8

excuse or justify his violation. Transcript of Jury Charge, pp.9-10. Specifically, the court charged that:

> In this case, Defendant Austin was cited for an improper lane change, in violation of that particular provision to which he pled guilty and paid a fine. You may consider this as an admission on the part of the Defendant. However, we tell the jury that this act dictates what a person's conduct ought to be. Ordinarily, an unexplained violation of the act would constitute negligence as a matter of law. However, in this case, the Defendant has presented evidence to excuse or justify his violation. Under certain circumstances, the person offering such an excuse has a burden of proof, therefore, if you find there was a violation of this act, it would only be evidence of negligence, which you should consider, along with all of the other evidence presented on the question of whether or not the Defendants were negligent.[2]

The Restatement Second of Torts, Section 288A, sets forth a list of specific instances where a violation of a statute will be excused, to include 288A(2)(c), that an actor is unable after reasonable diligence or care to comply. The Comment to Section 288A states that the list is not exclusive. Indeed, the Comment states that most legislative enactments and regulations are construed to require only reasonable diligence and care to comply with them, and if after such diligence and care, an actor is unable to comply, his violation will ordinarily be excused. *Bumbarger v. Kaminsky*, 311 Pa.Super. 177, 457 A.2d 552, 554-555 (1983); *Miller v. Hurst*, 302 Pa.Super. 235, 448 A.2d 614, 618 (1982)(a per se violation was excused because care was exercised); *Stanton By Brooks v. Astra Pharmaceutical Products, Inc.*, 718 F.2d 553, 564, n.24; *Brady v. Depew*, 2005 WL1667404 (M.D.Pa.)(a

---

[2]The charge was taken from Pa.SSII (Civil) 3.09.

violation of several statutes and a question of fact if violations should be excused); <u>Kleckner v. Glover Trucking Corp.</u>, 103 F.R.D. 553, 558 (M.D.Pa., 1984)(summary judgment denied although defendant admitted going through an intersection on a red light as well as admitted negligence). The court held that even in a case of per se negligence, a defendant may show a valid excuse. In our case, the evidence as to cause was contradictory. Accordindly, the matter was submitted to a jury and the jury was permitted to reject the excuse.

    B.  Finally, plaintiff urges a new trial because plaintiff was prejudiced by the limitation of questioning during voir dire.

    Regrettably, there is no transcript of the voir dire in civil cases. Accordingly, we do not have the questions the court did not permit. Of course, there was no objection to the limitations on voir dire which certainly would have been reported. Regardless, plaintiff submitted 44 proposed questions to the court. The defense submitted 37 questions. The court prepared a composite of counsel's questions and included questions it, too, deemed appropriate. There were no objections.

    As is customary, the court then allows counsel an opportunity to address the jury with any follow-up questions. Without a transcript, we can only rely on recollection. Whether counsel had the bias of jurors in mind or not with her questions, counsel's questions probed the jurors potential reactions to evidence which was prohibited by the court, not once during questioning, but required interrupting counsel on several occasions.

    At one point during the voir dire, the latter process in particular, there was an unexplained sounding of chimes through

the sound system in place.  The entire assembly was taken by surprise.  The court, in jest, did comment to both counsel that it was a sign of divine intervention to move on.  From the reaction of the assembly, including counsel, the comment was received in jest.  We do not believe anyone was prejudiced.  Nor do we believe counsel could suggest that any time they were not treated with courtesy and respect.

## Conclusion

For the foregoing reasons, plaintiff's motion for new trial is **DENIED**.

SO ORDERED.

                                        s/Edwin M. Kosik
                                        United States District Judge

Date: September 22, 2006